UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Radtkin, *et al.,*

Plaintiffs,

v.

Medtronic, Inc., *et al.*,

Defendants.

Case No. 3:24-cv-290

MEMORANDUM OPINION
AND ORDER

## I. Introduction

Plaintiffs David and Michelle Radtkin filed this action alleging that David Radtkin was injured by a medical device manufactured, marketed, and distributed by Defendants Medtronic, Inc., Medtronic USA, Inc., Medtronic Logistics, LLC, Medtronic Puerto Rico Operations Co., and Medtronic Neuromodulation. (Doc. No. 1). In their amended complaint, Plaintiffs allege that the device – Medtronic's SynchroMed II Implantable Drug Infusion Pump ("SynchroMed II") – was defective and ultimately required surgical removal. (Doc. No. 13). Plaintiffs argue the device's defect stemmed from Defendants' failure to satisfy its obligations under the FDA's Quality Management System Regulation ("QMSR"), Current Good Manufacturing Practice ("CGMP"), and Ohio law. (*Id.* at 34-35). Based on the alleged failure of the device, Plaintiffs assert various causes of action under Ohio law. (*Id.* at 32-44). Defendants moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6). (Doc. No. 14). Plaintiffs opposed the motion, (Doc.

No. 20), and Defendants filed a reply. (Doc. No. 21). For the reasons stated below, I grant Defendants' motion.

## II. BACKGROUND

Plaintiffs allege the following facts. David Radtkin suffers from postlaminectomy syndrome, multilevel degenerative disc disease, and hypertrophic changes with levoscoliosis. (Doc. No. 13 at 31). Due to the pain associated with these conditions, Radtkin requires a drug infusion pump to deliver pain medication to the intrathecal space of his spine. (*Id.* at 31, 37). Defendants manufacture such a device – the SynchroMed II. (*Id.* at 1-2). The SynchroMed II consists of two primary components: (1) an infusion pump; and (2) a thin, flexible catheter that delivers medication to the spinal canal. (*Id.* at 7). The device is implanted beneath the skin and delivers medication from the pump's reservoir, through the pump tubing, check valve catheter port, and catheter directly to the infusion site. (*Id.* at 8).

In 2009, Radtkin underwent his first SynchroMed II implantation, followed by implantation of a replacement device in 2015. (*Id.* at 31). On February 16, 2022, Radtkin underwent another surgical procedure to explant the 2015 device, and implant the device at issue here. (*Id.*). The implantation procedure was completed without complications. (*Id.*).

The next day, Radtkin presented to the Toledo Hospital emergency room with nausea, vomiting, fever, urinary retention, opioid-withdrawal delirium, and chest pain. (*Id.*). It was later determined Radtkin's symptoms resulted from opioid withdraw. (*Id.*). On April 11, 2022, Radtkin underwent removal of the SynchroMed II pump. (*Id.* at 32). Upon inspecting the device, Radtkin's medical providers determined that the source of his withdrawal was an "acute pump malfunction." (*Id.* at 31). They further observed that there was "no definite significant kinking or pump catheter tubing issues." (*Id.*).

Based on the alleged pump failure, Plaintiffs asset claims for defective manufacturing or construction (Count I), nonconformity with representation (Count II), loss of consortium (Count III), and punitive damages (Count IV). (*Id.* at 32-44). Defendants move to dismiss the amended complaint, arguing that Plaintiffs' claims are preempted by federal law and, alternatively, that Plaintiffs have failed to plausibly allege claims under Ohio law. (Doc. No. 14 at 1).

## III. STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. ANALYSIS

Defendants argue that Plaintiffs' claims should be dismissed because they are preempted by the Medical Device Amendments ("MDA") to the Federal Drug and Cosmetic Act ("FDCA"). (Doc No. 14 at 7-18). Defendants also contend that, even if the claims are not preempted, Plaintiffs have failed to plausibly allege their state-law claims. (*Id.* at 18-20).

Plaintiffs respond that their claims are based on violations of applicable federal law that parallel Ohio requirements, and thus are not preempted by the MDA. (Doc. No. 20 at 7, 12). Plaintiffs further assert that they have sufficiently pleaded their state-law claims. (*Id.* at 14-17).

## A. MDA PREEMPTION

Through the MDA, Congress established a comprehensive federal regulatory framework governing medical devices. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). The authority to regulate medical devices is reserved to the federal government. *See Dunlap v. Medtronic, Inc.*, 47 F. Supp. 2d 888, 892 (N.D. Ohio 1999).

The MDA preempts state-law claims in two ways. First, the MDA expressly preempts state requirement governing medical devices that are "different from, or in addition to" applicable federal requirements and that relate "to the safety or effectiveness of the device." 21 U.S.C. § 360k(a)(1)-(2).

The MDA establishes varying levels of regulatory oversight for medical devices depending on the risks they present. *Riegel*, 552 U.S. at 316. The SynchroMed II is classified as a Class III medical device. (Doc. No. 13 at 7). To obtain the statutorily-required premarket approval ("PMA"), a Class III device must endure a rigorous process, which imposes device-specific federal requirements. *See Kemp v. Medtronic, Inc.*, 231 F.3d 216, 221 (6th Cir. 2000). Section 360k(a) preempts some, but not all, state-law claims involving a federally regulated medical device. As the Supreme Court explained, § 360k(a) "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations" when the state-law duties underlying such claims "'parallel', rather than add to, federal requirements." *Riegel*, 552 U.S. at 330 (further citation omitted).

Also, state-law claims may be impliedly preempted. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). Private litigants cannot sue directly to enforce the FDCA because Congress vested enforcement authority in the federal government. *See id.* at 349 n.4 (2001). Nor can a private litigant bypass that restriction by repackaging a FDCA violation claim as a state-law cause of action.

*See id.* at 352-53. Thus, to avoid implied preemption, a claim must be based on "traditional state tort law which had predated the federal enactments in question[ ]." *Id.* at 353.

Together, express and implied preemption create a "narrow gap" through which a state-law claim involving a federally regulated medical device must pass. *Arnold v. CooperSurgical, Inc.* 681 F. Supp. 3d 803, 826 (S.D. Ohio 2023) (citation and quotation marks omitted). To navigate that gap, a plaintiff "'must be suing for conduct that *violates* the FDCA (or else his [or her] claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).'" *Id.* (quoting *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (further quoting *In re: Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)) (alteration by *Perez*) (emphasis in *Sprint Fidelis Leads*) (further citation omitted). In other words – to avoid preemption – the state-law claim "must be suing for conduct that (1) violates the FDCA and (2) gives rise to a recovery under state law even in the absence of the FDCA." *Arnold*, 681 F. Supp. 3d at 826.

While Defendants' motion addresses preemption before the sufficiency of Plaintiffs' state-law claims, "because preemption under the FDCA derives from the Supremacy Clause of the United States Constitution, courts should first analyze whether each claim can stand under state law, and only then decide the preemption questions when necessary." *Cline v. Medtronic, Inc.*, No. 2:20-cv-3826, 2021 WL 3860194, at *7 (S.D. Ohio Aug. 30, 2021) (internal quotation marks and further citations omitted). *See also Waltenburg v. St. Jude Med. Inc.*, 33 F. Supp. 3d 818, 832 (W.D. Ky. 2014) (finding plaintiffs' claims "pass muster under Rule 8" before deciding whether the claims are pre-empted by federal law).

Thus, I turn to Plaintiffs' state-law claims.

## B. DEFECTIVE MANUFACTURING/CONSTRUCTION

Plaintiffs bring claims under Ohio Revised Code § 2307.74 and Ohio common law, alleging that the SynchroMed II device implanted in Radtkin was defective and unsafe in its manufacture and construction, and failed to "conform with Defendants' own design specifications." (Doc. No. 13 at 33).

Defendants argue that Plaintiffs have failed to adequately plead this claim, noting that the amended complaint contains "only conclusory allegations about unidentified manufacturing defects or noncompliance with representation in Plaintiffs' SynchroMed II pump, which are untethered to Plaintiffs' alleged injuries." (Doc. No. 14 at 19). Specifically, Defendants contend that Plaintiffs failed to "plead ***any*** specific issue or defect in a particular component of Plaintiffs' pump, ***how*** any such issue was caused by a manufacturing or battery defect, or ***how*** any such issue resulted in any injury to the Plaintiffs." (*Id.*). Defendants assert that although Plaintiffs allege the SynchroMed II failed to conform Defendants' design specifications, they do not identify "what about the pump or catheter purportedly fell short of federally imposed PMA requirements, violated a federal statute or regulation, or otherwise caused the device to experience a defect that caused an injury." (*Id.* at 12).

As an initial matter, Defendants correctly note that Plaintiffs cannot maintain a product-liability claim based on Ohio common law. The Ohio Products Liability Act ("OPLA") expressly abrogates "all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B). Thus, if Plaintiffs are to recover, they must do so under the OPLA.

Under the OPLA "[a] product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." Ohio Rev. Code § 2307.74. To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual content – beyond a mere

malfunction – to plausibly allege that the device materially deviated from its intended design or specifications. *See, e.g., Boroff v. Alza Corp.*, 685 F. Supp. 2d 704, 708 (N.D. Ohio 2010) (dismissing manufacturing claim where complaint did not contain factual allegations supporting that plaintiffs specific device deviated from any design specifications, formula, or performance standards.); *Parker v. Medtronic Sofamor Danek USA, Inc.*, No. 1:20-CV-02456, 2021 WL 4751185, at *2 (N.D. Ohio Oct. 12, 2021) (finding allegation that screws became loose in an anterior cervical plate system did not support an inference that product was defectively manufactured). A plaintiff must also plead sufficient facts "that would permit the Court to conclude that a manufacturing defect occurred and that the defect was the proximate cause of [the plaintiff's] alleged injuries." *Frey v. Novartis Pharms Corp.*, 642 F. Supp. 2d 787, 795 (S.D. Ohio 2009).

Plaintiffs allege that the SynchroMed II was defective in its manufacture and construction and failed to conform – when it left Defendants' control – to Defendants' design specifications. (Doc. No. 13 at 33). They assert that Mr. Radtkin's injuries are the result of that manufacturing defect. (*Id.* at 38). Specifically, Plaintiffs allege Defendants:

> a. failed to manufacture the product so as to avoid an unreasonable risk of harm to patients in whom the product was implanted, including Plaintiffs;
>
> b. failed to conform with Defendants' own design specifications so as to avoid an unreasonable risk of harm to patients in whom the product was implanted, including Plaintiffs;
>
> c. failed to establish and maintain sufficient quality control procedures to ensure product conformity with specified requirements so as to avoid an unreasonable risk of harm to patients in whom the product was implanted, including Plaintiffs; and/or
>
> d. otherwise, negligently or carelessly manufactured, distributed, or sold the product.

(*Id.* at 33).

Plaintiffs further allege that Mr. Radtkin's SynchroMed II deviated from FDA-approved PMA manufacturing requirements, QMSRs, and CGMPs, and that these deviations proximately caused his injuries. (Doc. No. 20 at 15). While Plaintiffs fail to allege how the SynchroMed II

deviated from its PMA manufacturing requirements or violated QMSRs, they do identify eight CGMP requirements that they contend Defendants violated, including:

> a. failure to achieve consistent compliance in areas such as design controls and to perform design validation testing to ensure the manufacturing complied with PMA specifications (21 C.F.R. § 820.30(g));
>
> b. failure to control production processes to ensure that device conformed to PMA specifications (21 C.F.R. § 820.70(a));
>
> c. failure to achieve consistent CAPA compliance (21 C.F.R. § 820.100);
>
> d. failure to address the cause of nonconformities (21 C.F.R. § 820.100(a)(2));
>
> e. failure to correct and prevent the recurrence of nonconformities (21 C.F.R. § 820.100 (a)(3));
>
> f. failing to report consumer adverse events (21 C.F.R. § 803.50(a)(1));
>
> g. failure or refusal to furnish material or information respecting the device that is required by law (21 U.S.C. § 360i and 21 C.F.R. § 806.10(a)(1)); and
>
> h. failure to address quality problems (21 C.F.R. § 820.100(a)(5)).

(Doc. No. 13 at 35).

Plaintiffs allege "these defects resulted in acute pump malfunction" and prevented medication from being delivered to the intrathecal space. (*Id.* at 38). Plaintiffs assert that, had Defendants complied with the identified CGMPs and parallel state requirements, the defect in Mr. Radtkin's device would not have occurred or would have been discovered. (*Id.*) Thus, Plaintiffs allege Defendants are "liable to the Plaintiffs for the manufacturing of a product that is defective in that it did not conform at the time it left the control of the Defendants, to design specification made by Defendants." (*Id.* at 39).

Plaintiffs support their allegation of noncompliance by pointing to a series of FDA inspections and warning letters issued to Defendants between 2006 and 2013. The inspections and letters concern, among other things, failures to establish and maintain process-control procedures,

inadequate corrective and preventive measures relating to motor corrosion, and failures to review, evaluate, and investigate complaints concering the SynchroMed II. (*Id.* at 35-36).

But these historical violations do not support a reasonable inference that Radtkin's device suffered a manufacturing defect or materially deviated from Defendants' own design specifications. True, they may support an inference that Defendants experienced manufacturing or quality-control problems with SynchroMed II devices during the periods addressed by those actions. But the device at issue here was implanted in February 2022 – nearly a decade after the most recently cited FDA action. Plaintiffs do not allege that Mr. Radtkin's pump was manufactured during the period covered by those actions, or plead facts supporting an inference that the manufacturing deficiencies identified in those actions persisted when his device was manufactured. *See Farson v. Coopersurgical, Inc.*, No. 3:22 CV 716, 2023 WL 5002818, at *10 (N.D. Ohio Aug. 4, 2023) (holding plaintiff's vague allegations that defendant failed to comply with identified CGMPs might save her claim from preemption, but failed "to make a cognizable [manufacturing defect] claim at all").

Plaintiffs contend that the significance of the historical violations "lies not in finding the specific malfunction experienced by Plaintiff Radtkin," but because they reflect "systematic failures that apply broadly and speak to the very way the Defendants[ ] operate the manufacturing process." (Doc. No. 20 at 17). But characterizing the historical violations as "systemic" does not bridge the nine-year gap between the historical violations and the alleged 2022 manufacturing defects.

To prove a manufacturing defect based on past violations, two things must be inferred: first, that those past deficiencies lasted throughout the period Mr. Radtkin's device was made, and second, that those same deficiencies actually affected Mr. Radtkin's specific pump. *Cf. Brumfield v. Medtronic, Inc.*, No. 3:20-cv-0522, 2021 WL 933869, at *6 (S.D.W.V. Mar. 11, 2021) (finding inference of causal connection where plaintiff alleged defective SynchroMed II device was manufactured during the time FDA inspections revealed significant violations of federal law).

Plaintiffs also rely on Mr. Radtkin's prior successful use of the same SynchroMed II model. (Doc. No. 13 at 32). But the successful performance of a different device does not plausibly establish that a pump implanted years later materially deviated from otherwise identical units or that such a deviation caused Radtkin's injuries. *Cf. O.M. ex rel. McConnell v. KLS Martin LP*, 560 F. Supp. 3d 1084, 1088 (N.D. Ohio 2021) (finding that where two medical devices failed before a third succeeded within a thirty-day period, it was reasonable to infer that the first two units were manufactured at the same time and deviated in a material way from otherwise identical units).

Plaintiffs identify SynchroMed II recalls in 2008, 2009, 2011-2015, 2017-2018, 2020, and 2024. (Doc. No. 13 at 23). But Plaintiffs do not allege that Mr. Radtkin's pump was manufactured during a recall window or that it shared the specific defect identified in any cited recall. Thus, those recalls are not facts which allow me to make a reasonable inference that the device implanted in Mr. Radtkin materially deviated from applicable specifications or otherwise identical units. *Cf, Reynolds v. Medtronic*, No. 3:20-CV-403, 2021 WL 1854968, at *2, *9 (S.D. Ohio May 10, 2021) (denying motion to dismiss after noting, among other things, that plaintiff's device was implanted during the time of a recall).

Defendants argue that Plaintiffs' claim must fail because they have not plead a specific issue or defect in a particular component of Radtkin's pump, how an alleged issue was the result of a specific manufacturing defect, or how any such issue caused Mr. Radtkin's injuries. (Doc. No. 14 at 19). Plaintiffs counter that Defendants "do not provide a basis for their argument that Plaintiffs must allege exactly what went wrong in Defendants' manufacturing process to survive the pleading stage." (Doc. No. 20 at 16).

While Plaintiffs do not need to identify the precise failure in the manufacturing process, they must allege facts that support a reasonable inference that the device deviated from specifications or identical units and were defectively manufactured. *See, e.g., O.M.*, 560 F. Supp. 3d at 1088 (noting

that at the pleading stage, a plaintiff need not explain how device deviated, but must plead facts to support an inference that device was defectively manufactured); *Boroff*, 685 F. Supp. 2d at 708 (N.D. Ohio 2010) (dismissing claim where plaintiff failed to plead facts supporting an inference that the device deviated from specifications); *Grubbs v. Smith & Nephew, Inc.*, No. 1:19-cv-248, 2020 WL 5305542, at *4 (S.D. Ohio Sept. 4, 2020) (noting that "'[a]t a minimum courts have required allegations that the defendant manufactured the product, that the product was used by the plaintiff, that the product failed while being used by the plaintiff, and that the portion of the product that failed could be identified and is so identified in the complaint.'") (alteration in *Grubbs*) (further citation omitted).

*Reynolds v. Medtronic* is instructive. Like Mr. Radtkin, the plaintiff in *Reynolds* brought a manufacturing defect claim, alleging a defective SynchroMed II pump failed to deliver necessary pain medication. *Reynolds*, 2021 WL 1854968, at *1. The plaintiff in *Reynolds* not only identified prior recalls, but also alleged that the implanted device was manufactured during a recall period. *Id.* at *2. Moreover, the plaintiff identified a physical condition of the particular device from which a defect could be inferred. An MRI revealed that the catheter was free to rotate, causing it to kink each time the pump twisted. *Id.*

Upon removal, the operating physician observed "severe twisting of the catheter throughout the flank, possibly being the reason for its kinking off." The doctor added that it was it was difficult to determine whether the catheter had sheared off from the insertion site or from the device itself. *Id.* Because of this structural failure, the medication failed to reach the plaintiff's intrathecal space. *Id.* at *8. By identifying a physical condition of the particular device, among other factors, the plaintiff had pleaded a manufacturing defect claim that was "plausible on its face." *Id.* at *9.

Here, Plaintiffs generally allege that Radtkin's pump experienced an "acute pump malfunction" and failed to deliver medication. (Doc. No. 13 at 32). But they do not allege

implantation during a period of recall, identify a flawed physical condition, a specific deviation from applicable specifications, a difference from otherwise identical units, or other factual circumstances permitting an inference that the malfunction resulted from a manufacturing defect.

I accept as true – as Rule 8 requires – Plaintiffs' allegation of acute pump malfunction. But § 2307.74 does not impose liability merely because a device malfunctions. It requires the product to have materially deviated "from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." Ohio Rev. Code § 2307.74. Plaintiffs do not plead facts that allow me to make a reasonable inference that any of the above occurred. *See Shawver v. Zimmer Biomet Spine, Inc.*, No. 3:24-cv-454, 2024 WL 4458261, at *11 n. 11 (observing that "because a medical device might fail for many reasons, the device's alleged failure cannot by itself support a reasonable inference of manufacturing defect."); *Tomlin v. Smith & Nephew, Inc.*, No. 3:19-cv-354, 2020 WL 5230830, at *5 (S.D. Ohio Sept. 2, 2020) (dismissing manufacturing defect claim where plaintiff failed to specify what the manufacturing defect was or how device deviated from manufacturing standards).

Because Plaintiffs have failed to allege facts plausibly connecting the alleged malfunction to a manufacturing deviation within the meaning of § 2307.74, I grant Defendants' motion to dismiss Count I.

### C. Defective Due to Nonconformity with Representation

Plaintiffs next assert a claim for nonconformity with representation under Ohio Revised Code § 2307.77. (Doc. No. 13 at 40). Plaintiffs allege Defendants represented and marketed the SynchroMed II as: (1) "a safe, proven, and effective way to manage chronic pain with fewer side effects and lower doses than systemic medication"; (2) "a functional device that meets the device manufacturing and design specifications required by federal regulations parallel to Ohio

requirements"; (3) a device "designed to help eliminate systemic opioids and provide effective pain relief"; and (4) a device with "a battery life of '4 to 7 years.'" (*Id.* at 42). Plaintiffs allege these representations were made directly or indirectly thorough Defendants and their sales representative, employees, distributors, agents, or detail persons. (*Id.* at 9). Despite these representations, Plaintiffs allege that Mr. Radtkin received a device that "experienced acute pump malfunction within a day" of implantation. (*Id.* at 42). Plaintiffs therefore contend that Radtkin's device failed to "conform to representations of safety and functionality made by Defendant." (*Id.* at 43).

Defendants argue that the amended complaint contains only conclusory allegations of nonconformity. (Doc. No. 14 at 19). They assert that Plaintiffs fail to explain how the pump failed to conform to any identified representation. (Doc. No. 21 at 7). They also contend that Plaintiffs have failed to plead facts suggesting Defendants violated federal regulations "related to drug delivery, safety, and efficacy, the device battery, or otherwise, in the manufacturing of [Mr. Radtkin's] specific device, or how they caused any injuries." (*Id.* at 8).

Under Ohio law, "[a] product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer." Ohio Rev. Code § 2307.77. To prevail on such a claim, a plaintiff must ultimately show:

> (1) that the manufacturer made a representation as to a material fact concerning the character or quality of the manufacturer's product; (2) that the product did not conform to that representation; (3) that the plaintiff justifiably relied on that representation; and (4) that the plaintiff's reliance on the representation was the direct and proximate cause of the plaintiff's injuries.

*Gawloski v. Miller Brewing Co.*, 644 N.E.2d 731, 734 (Ohio Ct. App. 1994). At the pleading stage, a plaintiff must "set forth facts from which the Court may plausibly infer that a representation was made and that the [product] did not conform to that representation." *Darwish v. Ethicon, Inc.*, No. 1:20 CV 1606, 2020 WL 7129582, at *9 (N.D. Ohio Dec. 4, 2020) (further citation and quotation marks omitted) (alteration in *Darwish*).

Plaintiffs first assert that Defendants marketed the SynchroMed II as "a safe, proven, and effective way of managing chronic pain with fewer side effects and lower doses than systemic medication." (Doc. No. 13 at 42). Plaintiffs allege Defendants failed to conform to representations concerning the device's safety and functionality. (*Id.* at 43). Beyond the allegation of "acute pump malfunction," Plaintiffs rely on the same alleged CGMP violations and historical FDA warning letters laid forth above. (*Id.* at 40-42).

But generic representations concerning a product's safety do not, without more, plausibly establish nonconformity merely because a particular device subsequently malfunctioned. *See, e.g., Moshi v. Kia America, Inc.*, 155 F.4th 652, 663 (6th Cir. 2025) (granting dismissal after holding allegations that defendant "represent[ed] their cars are safe, and as safe or safer than cars made [by] other manufacturers" were conclusory and did not qualify as express representations that could support a nonconformance to representation claim); *Jordan v. Paccar, Inc.*, 37 F.3d 1181, 1185 (6th Cir. 1994) (noting that "Ohio law distinguishes between serious representations and commercial puffery"); *Saud v. Ford Motor Co.*, No. 1:23-cv-251, 2026 WL 878955, at *23 (S.D. Ohio Mar. 31, 2026) (holding that defendant's statement that their product was "safe to the fullest practicable extent" were too generic to create liability) (citations and quotation marks omitted).

Plaintiffs allege that Defendants misrepresented that the SynchroMed II complied with manufacturing and design specifications required by federal regulations parallel to Ohio requirements. But that theory depends on the same unsupported premise underlying Count I – that Mr. Radtkin's pump materially deviated from those specifications. For the reasons laid forth above, Plaintiffs have not alleged facts plausibly supporting that inference.

Plaintiffs note that Defendants represented that the SynchroMed II was "designed to help eliminate systemic opioids and provide effective pain relief." (Doc. No. 13 at 42). But Plaintiffs do not allege that the device was designed otherwise.

Lastly, although Plaintiffs note that Defendants represented that the SynchroMed II had a battery life of "4 to 7" years, they do not allege that the pump's failure was the result of a battery malfunction. (*Id.*). Thus, the veracity of that alleged representation is irrelevant.

Even accepting the alleged representations and pump malfunction as true, Plaintiffs have not plausibly alleged that Mr. Radtkin's device failed to conform to the representations upon which they base Count II. Thus, I grant Defendants' motion to dismiss as it relates to that Count. *See Grubbs*, 2020 WL 5305542, at *6 (dismissing § 2307.77 claim, in part, because plaintiff did not provide sufficient factual allegations showing how product did not conform to representations).

**D. PREEMPTION**

Because Plaintiffs have failed to plausibly allege cognizable claims under §§ 2307.74 and 2307.77, I need not determine whether those claims – if adequately plead – would survive express preemption under 21 U.S.C. § 360k(a) or implied preemption under *Buckman*. Thus, I express no opinion on that question.

**E. LOSS OF CONSORTIUM AND PUNITIVE DAMAGES**

Plaintiffs concede that their claims for loss of consortium and punitive damages claims are derivative of their substantive state-law claims, and "rise[ ] or fall[ ]" with those claims. (Doc. No. 20 at 17). Because Plaintiffs have failed to state a plausible claim under either § 2307.74 or § 2307.77, the derivative claims cannot independently survive. Thus, I grant Defendants' motion to dismiss Count III for loss of consortium, and Count IV for punitive damages.

## IV. CONCLUSION

For the reasons stated above I grant Defendants Medtronic, Inc., Medtronic USA, Inc., Medtronic Logistics, LLC, Medtronic Puerto Rico Operations Co., and Medtronic Neuromodulation's motion to dismiss Plaintiffs David Raskin and Michelle Radtkin's claims for defective manufacturing/construction (Count I); defective due to nonconformity with

representation (Count II); loss of consortium (Count III); and punitive damages (Count IV). I also deny Defendants' request for oral argument as moot. (Doc. No. 14 at 2). This case is closed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge